UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

| | |
|---|---|
| TIMOTHY MAYO, et al., | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
|     v. | ) |
| | )    Civ. No. 14-1751 |
| JOHNATHAN B. JARVIS, et al. | ) |
| | ) |
|     Defendants, | ) |
| | ) |
| STATE OF WYOMING, | ) |
| SAFARI CLUB INTERNATIONAL, | ) |
| | ) |
|     Intervenor-Defendants. | ) |

_____)

## PLAINTIFFS' MOTION FOR PARTIAL RECONSIDERATION

Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, Plaintiffs move the Court for partial reconsideration of the Court's March 29, 2016 disposition of the parties' cross-motions for summary judgment.  "A Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996).  Accordingly, Plaintiffs are confining this motion to one aspect of the Court's summary judgment ruling as to which Plaintiffs respectfully submit that the standard is satisfied: the Defendant U.S. Fish and Wildlife Service ("FWS") failure to address, in its "Addendum" to the Biological Opinion, whether the hunting of elk in Grand Teton National Park ("Grand Teton" or the "Park"), constitutes

"harassment" within the meaning of the Endangered Species Act, 16 U.S.C. § 1531 *et seq.*

("ESA").[1]

In its ruling on the harassment issue, the Court agreed with Plaintiffs that the 2013

Addendum "did not explicitly discuss whether the inclusion of gut piles in the grizzly bear's diet

or its efforts to seek those gut piles out 'significantly disrupted' the grizzly bear's natural feeding

patterns to constitute harassment" within the meaning of the ESA's definition of that term.  ECF

No. 64 at 81.  Accordingly, as the Court recognized, based on the Addendum alone, the most that

could be said is that the FWS made an "implicit" finding that the gut piles associated with elk

hunting do not constitute harassment.  *Id.* at 82; *see also id.* at 81 ("The agency's *silence* in the

face of this evidence *implies* that it did not consider these activities to rise to the level of

'harassment,' as that term is used in the taking context.') (emphasis added).

However, under well-established APA principles, neither an agency's "silence in the face

of [] evidence," nor the agency's assertions that it made "implicit" findings, are sufficient for

purposes of judicial review.  *See, e.g.*, *Point Park Univ. v. N.L.R.B.*, 457 F.3d 42, 50 (D.C. Cir.

2006) ("We can only look to the Board's stated rationale. We cannot sustain its action on some

other basis the Board did not mention."); G*erber v. Norton*, 294 F.3d 173, 185 (D.C. Cir. 2002)

("[S]tating that a factor was considered – or found – is not a substitute for considering or finding

it") (internal quotation omitted); *Anacostia Riverkeeper, Inc. v. Jackson*, 798 F. Supp. 2d 210,

241 (D.D.C. 2011) ("the Court will not transform the Agency's silence into an expression of its

expertise") (citing *Tex Tin Corp. v. EPA*, 935 F.2d 1321, 1324 (D.C. Cir. 1991)); *Quantum*

---

[1] Because this is a dispositive motion, the duty to confer with opposing counsel in Local Rule 7(m) does not apply.  Nonetheless, Plaintiffs have provided notice to counsel for Defendants and Defendant-Intervenors of Plaintiffs' intention to file this motion, and it is Plaintiffs' understanding that Defendants and Defendant-Intervenors oppose the motion.

*Entm't., Ltd. v. U.S. Dep't of Interior, Bureau of Indian Affairs*, 597 F. Supp. 2d 146, 154-55 (D.D.C. 2009) ("A reviewing court must have more than a result; it needs the agency's reasoning for that result.") (citing *Sprint Nextel Corp. v. FCC*, 508 F.3d 1129, 1132-33 (D.C. Cir. 2007).[2]

In apparent recognition of this principle, the Court does not appear to have found the FWS's "silence" in the Addendum a sufficient basis alone for holding that the FWS adequately considered the harassment issue.  Instead, the Court relied on another document – a letter sent by the FWS and National Park Service ("NPS") responding to Plaintiffs' formal 60-day notice of intent to sue for violations of the ESA – that, according to the Court, provided the necessary "explicit" rationale for why grizzlies' attraction to hunter-created gut piles does not constitute harassment.  ECF No. 64 at 82 (citing NPS-6860-61).  However, there are several reasons why the Court's reliance on that document to support its holding that the FWS made a supportable "determination" on harassment, ECF No. 64 at 83, was "clear error" within the meaning of *Firestone*, 76 F.3d at 1208.

**First**, in neither the government's  opening summary judgment brief, nor in its opposition/reply brief, did the government argue that the response to Plaintiffs' formal notice letter did, or legally could, set forth a sustainable basis on the harassment issue or, for that matter, any other matter.  In fact, in seventy pages of merits briefing, the government made no mention of that document *at all*.  Accordingly, under well established principles of judicial

---

[2]  *See also SEC v. Chenery Corp.*, 332 U.S. 194, 196-97 (1947) ("It will not do for a court to be compelled to guess at the theory underlying the agency's action; nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive."); *Mora-Meraz v. Thomas*, 601 F.3d 933, 941 (9th Cir. 2010) ("We also may not read into the agency's silence and make inferences thereupon."); *San Luis & Delta-Mendota Water Auth. v. Salazar,* 666 F. Supp. 2d 1137, 1154 (E.D. Cal. 2009) ("[A] court 'cannot infer an agency's reasoning from mere silence . . . ,' but must 'rely only on what the agency actually said'") (internal citations omitted).

review which this Court has applied in other cases, the government waived any reliance on the argument that the response letter could supply a rationale that, as the Court correctly found, was never addressed in the 2013 Addendum itself. *See Defenders of Wildlife v. Jewell*, 815 F.3d 1, 8 (D.C. Cir. 2016) (sustaining this Court's ruling that the plaintiff had waived an argument by failing to raise it in summary judgment briefing).

**Second**, although the government's waiver is alone a sufficient basis for the Court to reconsider its ruling on this point, there is an important reason why the government elected not to rely on the notice response: it is not even in the *FWS's* certified Administrative Record. *See* ECF No. 33-2 (7/8/15 "Index to FWS Administrative Record"). In fact, it is not in the FWS's record because, as explained below, Plaintiffs challenged its inclusion in *that* record on the grounds that it constituted an impermissible post hoc justification for the 2013 Addendum.

Thus, the notice response *was* included in the *initial* version of the FWS record that was provided to Plaintiffs and filed with the Court. *See* ECF No. 26-2 at 5 (referring to the 5/13/14 document initially Bates-labeled FWS 0001699-FWS0001709). However, using the process ordered by the Court for the parties to attempt to resolve "potential record disputes" amongst themselves, ECF No. 23, Plaintiffs challenged the inclusion of the document in the FWS record on the ground that it post-dated the FWS decision document under review. *See* Ex. A (4/22/15 letter from Plaintiffs' counsel to Defendants' counsel) at 4 ¶ 7 ("Can the FWS explain the basis for including this post-Addendum document in the record for purposes of judicial review [of the Addendum]"?). In response, the government stated that the FWS "*will remove from the Record the response letter*" from the FWS's designated record. *See* Ex. B (5/7/15 letter from Defendants' counsel to Plaintiffs' counsel) at 4 ¶ 7 (emphasis added).

This is why the response is not in the final administrative record compiled by the FWS for purposes of judicial review of the Addendum, *see* ECF No. 33-2 (final certified index of the FWS record).  It also, presumably, explains why Federal Defendants did not cite to the document anywhere in any of their summary judgment briefs, or even request that it be included in the parties' Joint Appendix.[3]

It is axiomatic that the Court may not sustain the FWS's decision based on a document that is not in the FWS record. Thus, when an agency certifies a record for purposes of judicial review, it represents to the Court that the materials so certified consist of "all documents and materials that the agency directly or indirectly considered" in issuing the challenged decision, and nothing "more nor less." *Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Eng'rs*, 448 F. Supp. 2d 1, 4 (D.D.C. 2006) (internal citations omitted).  Hence, the FWS's certification of the final record filed with the Court as "constitute[ing] the true, accurate, *and complete administrative record for the determinations at issue in this case*," ECF No. 33-2 at ¶ 6 (emphasis added), forecloses the Court's reliance on a document that the FWS excluded from that record.  *See Walter O. Boswell Memorial Hospital v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984) (holding that judicial review is limited to the "whole record" that the agency certifies was "before" the agency "at the time [the agency] made [the] decision" under review) ("*Boswell Memorial Hospital*").

---

[3] Nor does the mere fact that the same document is in the *NPS* record – because it was "before" *that* agency when it made its decision to authorize the 2015 elk hunt – afford a basis for the Court's reliance on it for purposes of reviewing the FWS Addendum.  As the Supreme Court explained in *Bennett v. Spear*, 520 U.S. 154 (1997),  a Biological Opinion (and hence an Addendum to such an Opinion relied on as the final basis for the agency's decision) is a "final agency action" *of the FWS*, *id*. at 178-79.  Thus, the Addendum is reviewable as a final agency action based on the decision documents set forth in the *FWS's* certified record.

Judicial reliance on a document omitted from the FWS record not only contravenes well-established administrative law principles, but  also works a "manifest injustice" on Plaintiffs under the circumstances here.  *Firestone*, 76 F.3d at 1208.  Plaintiffs followed the process required by the Court for resolving administrative record disputes and, employing that process, succeeded in having the notice response omitted from the FWS record – precisely because it was *not* relied on by the FWS in making the decision under review here.  On that basis, Plaintiffs reasonably assumed that the government could not (and, indeed, did not) rely on that letter in an effort to shore up the basis for its decision (i.e., the Addendum).  It is therefore highly prejudicial to Plaintiffs for the Court to nevertheless rely on this extra-record document as affording the "explicit" rationale for a determination that is nowhere to be found in the Addendum itself.

**Third**, even if the Federal Defendants had not waived their reliance on the response to Plaintiffs' 60-day notice letter, and even if the FWS had not agreed to remove the document from the "complete" administrative record made available for judicial review, the Court's reliance on the document would still be legally untenable.  Thus, sustaining an agency decision based on a document that post-dates the decision under review – in this case a document that was not prepared for more than six months *after* the Biological Opinion Addendum – is a quintessential example of a "post hoc rationalization" on which judicial review of agency action may not be based under well settled Supreme Court and Circuit precedent.  *Boswell Memorial Hospital*, 749 F.2d at 792.  "'Review is to be based on the *full* administrative record that was before the [agency] *at the time [it] made [its] decision*.'"  *Id*. (emphasis added) (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971)); *id*. ("To review more than the information before the [agency] at the time [it] made [its] decision risks our requiring

administrators to be prescient or *allowing them to take advantage of post hoc rationalizations*")
(emphasis added).

These principles apply squarely to the document at issue, which not only post-dated the
FWS decision document under review by many months, but was developed for the sole purpose
of responding to Plaintiffs' notice of ESA violations, which is a jurisdictional prerequisite to
bringing suit under the ESA.  *See* 16 U.S.C. § 1540(g).  Congress's purpose in mandating pre-
litigation notice of potential ESA claims was not to give an agency the opportunity to provide
post hoc rationalizations for decisions previously made but, rather, to afford the agency "'an
*opportunity to bring itself into complete compliance with the [ESA]* and thus likewise render
unnecessary a citizen suit.'"  *Friends of Animals v. Ashe*, 808 F.3d 900, 904 (D.C. Cir. 2015)
(emphasis added) (citing *Hallstrom v. Tillamook Cty.*, 493 U.S. 20, 29 (1989)); *Am. Forest Res.
Council v. Ashe*, 946 F. Supp. 2d 1, 11 (D.D.C. 2013), *judgment entered*, 301 F.R.D. 14 (D.D.C.
2014), *aff'd* 601 F. App'x 1 (D.C. Cir. 2015) ("the purpose of the 60-day 'notice' requirement is
. . . to put the agency on notice of the alleged statutory violation *so that it may have an
opportunity to remedy it*") (emphasis added).  Therefore, reliance on the post-Addendum
response letter as support for an otherwise inadequate decision document not only contravenes
the general administrative law principle that post hoc rationalizations may not form the basis for
judicial review, but also runs counter to the legislative purpose underlying the ESA's notice
requirement.  *Cf. Turtle Island Restoration v. National Marine Fisheries Service*, 340 F.3d 969,
975 n.10 (9th Cir. 2003) (holding that that a statutory interpretation set forth in response to an

ESA notice letter was "not entitled to *Chevron* deference" because it "lack[ed] the force of law") (internal citation omitted).[4]

Because the Addendum's "silence" on the harassment issue cannot be deemed sufficient, by itself, to sustain that decision document against Plaintiffs' challenge, the Court should reconsider its resolution of this issue and remand to the FWS.  Indeed, the case law cited in the Court's opinion squarely supports this result.  *See* ECF No. 64 at 82.  In *Local 814, Int'l Bhd. Of Teamsters, Chauffeurs, Warehousemen v. NLRB*, 546 F.2d 989 (D.C. Cir. 1976), the Court of Appeals held that an additional explanation provided by an agency *after a remand from the court* should not be discounted as a "mere post hoc rationalization."  *Id*. at 991.  While recognizing the general principle that "post hoc rationalizations are an inadequate basis for review of agency decisions because they do not constitute the 'whole record' compiled by the agency," *id*. at 992 (quoting *Overton Park*, 401 U.S. at 419), the court held that "[i]f a reviewing court *finds the record inadequate to support a finding of reasoned decisionmaking by an agency* and the court is barred from considering rationales urged by others, only the agency itself can provide the required clarification" on remand.  *Id*.

The D.C. Circuit has recently reaffirmed that the holding in *Local 814* stands for the narrow principle that an additional agency explanation on remand from a reviewing court cannot be rejected as a post hoc rationalization.  *See Alpharma, Inc. v. Leavitt*, 460 F.3d 1, 6 (D.C. Cir. 2006).  While, once again, reiterating the general rule that "*post hoc* rationalizations 'have traditionally been found to be an inadequate basis for review' of agency decisions," the court

---

[4] Allowing an agency to rely on a response to a notice letter also has the counterproductive effect of encouraging the parties providing notice to file suit as soon as the notice period runs in order to avoid having their notice treated as an opportunity for shoring up a decision previously made instead of an opportunity for rectifying the asserted violation.

explained that, in *Local 814*, the "court concluded that we had the authority to consider a supplemental explanation that the NLRB provided *in response to our remand*." *Id.* (emphasis added). Reaffirming that principle, the court in *Alpharma* explained that "[n]eedless to say, *if it is appropriate to for a court to remand for a further explanation*, it is incumbent upon the court to consider that explanation when it arrives." *Id.* (emphasis added).[5]

In sum, it was both "clear error" and a "manifest injustice," *Firestone*, 76 F.3d at 1208, for the Court to resolve the harassment issue against Plaintiffs based on a document that (1) was not relied on by Federal Defendants in their summary judgment memoranda; (2) is not in the FWS administrative record and was excluded from that record based on Plaintiffs' objection; and (3) under Supreme Court and Circuit precedent could not be relied on in any event. Plaintiffs have also presented the Court with "new evidence," *id.* – i.e., the correspondence between the parties regarding the FWS record – shedding light on *why* the notice response is not in the FWS record. Consequently, while motions for reconsideration are granted sparingly, under the circumstances here several of the factors favoring the granting of such motions are satisfied. *See, e.g.*, *Wilkins v. District of Columbia*, 879 F. Supp. 2d 35 (D.D.C. 2012) (Contreras, J.) (granting a Rule 59(e) motion based on a finding that an issue of proximate cause that the court decided as a matter of law should have been decided by a jury); *Defenders of Wildlife v. Salazar*,

---

[5] In the other case cited in this Court's summary judgment ruling, *Clifford v. Pena*, 77 F.3d 1414 (D.C. Cir. 1996), the Court of Appeals held that the district court had not "improperly permitted the agency to supplement the record" with a declaration that "provide[d] the court with background information . . .well known to the agency and the parties." *Id.* at 1418. Here, the government not only failed to request that the FWS record be supplemented with the notice response – a request that, under the Court's scheduling order, was required to be made *before* summary judgment briefing could begin, *see* ECF No. 24 (establishing a deadline for the filing of "[a]ny record motions") – but Defendants did the opposite by *removing* the document from the FWS record. In addition, the response letter did not merely provide "background information"; rather, it purported to supply reasons why attracting grizzly bears to hunter-created gut piles does not entail "harassment" that appear nowhere in the decision document itself.

842 F. Supp. 2d 181, 184 (D.D.C. 2012) (holding that the plaintiffs had "satisfied the Rule 59(e) standard, rigorous as it is, because there is a 'need to correct a clear error'" in the court's summary judgment ruling regarding the government's rationale for the decision under review).

Finally, granting Plaintiffs' motion for reconsideration on the harassment issue would not require a significant revision in the Court's disposition of this case and the related case brought by the Sierra Club. The Court has already remanded another ESA "take" issue to the FWS, *see* ECF No. 64 at 70-78, and, in doing so, the Court made clear that "nothing in the Court's opinion is intended to foreclose the FWS's authority on remand, and in its discretion, to revisit or further consider" additional ESA issues raised by Plaintiffs, including the harassment issue. *Id.* at 78. The modest relief that Plaintiffs request on reconsideration is simply that, instead of leaving the matter to the FWS's discretion, the Court specifically instruct the FWS to reassess the harassment issue as well.[6]

---

[6] Since Plaintiffs are not requesting, on reconsideration, that the Addendum be vacated based on the failure to address the harassment issue, there also is no need for the Court to engage in an analysis of whether the vacatur standard is satisfied. *See* ECF No. 64 at 73-78 (concluding that the "best course here is to remand the 2013 Addendum without vacatur"). At the same time, Plaintiffs note that it cannot be presumed to be a foregone conclusion that the FWS will reach the same conclusion in response to a Court-ordered remand as was set forth in the response to Plaintiffs' notice letter. First, it is unclear who even wrote the notice response and, in particular, whether any FWS *grizzly bear biologists* played any role in evaluating whether hunter-caused gut piles constitute harassment within the meaning of the ESA. Second, on its face, the post hoc response letter raises more questions than it answers with regard to the harassment issue. For example, it asserts that "[g]ut piles/remains from hunter-killed elk . . . differ little from gut piles/remains from natural predation . . . *except that they are the result of human versus natural processes*." NPS-0006881 (emphasis added). Under the ESA implementing regulations, however, that difference is dispositive, because the ESA's harassment prohibition *only* applies to *human* activities that "disrupt normal [i.e., natural] behavioral patterns." 50 C.F.R. § 173 (defining "harassment"). Indeed, the notice response as much as admits that such disruption is in fact occurring as a result of the elk hunt, explaining that the "ultimate effects on grizzly bears from fewer hunters on [Grand Teton and National Elk Refuge] lands, while clearly resulting in a decrease of easily obtained food (gut piles), *will include a more naturally functioning landscape for ungulates and bears*." NPS-0006861 (emphasis added). This is tantamount to a concession that, by making gut piles more "easily" available than would otherwise be the case, the elk hunts

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court partially

reconsider its summary judgment disposition.  For the convenience of the Court, a Proposed

Order is attached.

                                          Respectfully submitted,

                                          */s/ Eric R. Glitzenstein*
                                          Eric R. Glitzenstein (D.C. Bar No. 358287)
                                          Katherine A. Meyer (D.C. Bar No. 244301)

                                          MEYER GLITZENSTEIN & EUBANKS, LLP
                                          4115 Wisconsin Avenue, N.W., Suite 210
                                          Washington, DC 20016
                                          T: (202) 588-5206
                                          F: (202) 588-5049
                                          eglitzenstein@meyerglitz.com
                                          kmeyer@meyerglitz.com

                                          Counsel for Plaintiffs

Dated: April 25, 2016

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing motion is being served, this 25th day of April, 2016, on

all counsel of record, through filing with the Court's electronic records filing system.

                                          /s/ Eric R. Glitzenstein

                                          Eric R. Glitzenstein

---

are indeed skewing the bears' natural feeding behavior and directly interfering with a "naturally
functioning landscape for ungulates *and bears*."  This may also explain why the government
opted not to rely on its notice response and also highlights why Plaintiffs have "suffered
prejudice" from the Court's reliance on the document.  *Gerber*, 294 F.3d at 182.